**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN CONSTRUCTION & ENVIRONMENTAL SERVICES., a Nevada Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>TOTAL TEAM CONSTRUCTION SERVICES, INC., a California corporation; TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, a bonding company corporation, *et. al.*<br><br>    Defendants. | 1:14-cv-00087-LJO-GSA<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMSS (DOC. 8) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate

1

the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. <u>INTRODUCTION</u>

Plaintiff American Construction & Environmental Services, Inc. (ACES) alleges that is it owed money for changed and additional work performed for Defendant Total Team Construction Services, Inc. (Total Team) in support of Total Team's contract with the Army Corps of Engineers, Sacramento Division (ACOE). Total Team argues that ACES' claims are barred by the terms of their contract and thus cannot provide a basis for subject matter jurisdiction.

## III. <u>BACKGROUND</u>

**A.      Factual Background**

**<u>Events.</u>** Total Team entered into a contract (Prime Contract) with the ACOE to replace emergency generators at the Veterans Administration's Care Facility (the Project) in Fresno, California in October 2009. The Prime Contract required Total Team to obtain performance and payment bonds. According to a "PRE LIEN INFORMATION" document supplied by ACES, such a bond was issued by Travelers Casualty and Surety Company of America as Bond No. 105178294. Doc. 16-1 at 4.[1] Shortly after Total Team entered into the Prime Contract, it entered into a contract (Subcontract) with ACES for

---

[1] A copy of the bond was not furnished by either party. Plaintiff alleged in its complaint that it requested a copy of the bond, but that Total Team has not provided one.

1   ACES to install a fuel system for the Project for an initial agreed-upon amount of $283,833.

2        ACES claims that during the course of its performance, it was required to provide "changed

3   and/or additional work" by Total Team for which it was not compensated. Compl. at ¶¶ 12, 14. Doc. 2.

4   ACES further alleges that Total Team breached the Subcontract by "failing and refusing to pay sums to

5   due ACES under the Subcontract, and by improperly constructively cancelling and/or wrongfully

6   terminating the Subcontract." Compl. at ¶ 14. Doc 2.  ACES states that it last performed work under the

7   Subcontract on February 26, 2013. ACES reports that it served a demand letter on Total Team on

8   October 30, 2013. Compl. at ¶ 17. Doc 2. ACES filed its complaint on January 17, 2014. Total Team

9   responded to the Complaint with a Motion to Dismiss for lack of subject matter jurisdiction pursuant to

10  Fed. R. Civ. Pro. 12(b)(1) on February 24, 2014.

11       **Subcontract.** Three sections of the Subcontract are relevant to review of this case.

12       Section 5 discusses delays in work. When delays result from situations which are not the fault of

13  ACES, Section 5 makes clear that no compensation will be available and that an extension of time "shall

14  be the sole remedy of Subcontractor." Doc. 10-2 at 4. Compensation may be available, however, "in the

15  event Contraction obtains additional compensation from Owner." *Id.*  This section also requires ACES

16  to "cooperate fully" with Total Team should it decide to make such a claim and shall pay costs and

17  expenses if the claim is made at ACES' request. *Id.*

18       Section 6 governs changes in the scope of work. Section 6 mandates that ACES make changes in

19  the work provided when Total Team makes changes "in writing thru the use of a formal subcontract

20  change order." Doc. 10-2 at 4. Changes may cause the contract price to be adjusted. In the event that the

21  parties do not agree on the amount the contract price should be adjusted, Section 6 requires ACES to

22  "nonetheless timely perform the work as changed by Contractor's written direction." Section 6 also

23  provides that when there is a dispute about whether particular work constitutes "a change", ACES is

24  required to perform the work and provide written notice of a claim for compensation within ten days. *Id*

25       Section 18 discusses dispute resolution. Section 18.1, "Agreement to Arbitrate" dictates that

26  claims disputes are to be decided by the claim procedure identified in the Prime Contract:

> All claims, disputes and matters in question arising out of, or relating to this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, shall be decided by the claims procedure, including any arbitration clause, specified in the prime contract between Contractor and Owner. In the absence of an agreement to arbitrate in the prime contract, no claims or disputes shall be arbitrated unless provided for in this Agreement or mutually agreed upon by Contractor and Subcontractor in writing. *Id.*

However Section 18.2.5 adds:

> This Section shall not be deemed a limitation of any rights or remedies which Subcontractor may have under any Federal or State mechanics' lien laws or under any applicable labor and material payment bonds unless such rights or remedies are expressly waived by him. *Id.*

The parties disagree about the relative weight and interpretation of these two sections.

**Prime Contract**. Two sections of the Prime Contract are relevant the Court's review of this matter.

Section 52.233-1 governs dispute resolutions. Doc. 10-1 at 5.  It provides that the Prime Contract is subject to the Contract Disputes Act (CDA) and that all disputes "arising under or relating to this contract" are to be resolved under the CDA (41 U.S.C. §§ 7101-7113). *Id.* Section 52.233-1 outlines the procedure for filing claims with the federal government. *Id.* This section states that the term claim "as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain…" *Id.*

Section 52.243-4 discusses the procedure for implementing changes to the Prime Contract. This section allows the ACOE to make changes in the manner and scope of work in writing or verbally. Doc. 10-1 at 7. It also allows the Total Team to make an "equitable adjustment" to the price and modify the Prime Contract in writing. *Id.* Total Team, however, must assert its right to an adjustment within 30 days of receiving a change order and before it has received final payment. *Id.*

Total Team asserts that it "is in the process of preparing its own CDA claim for changes, delays, etc. to submit to the Contracting Officer" but has not provided any supporting documentation of these efforts. Doc. 9  at 7.

4

**B.    Legal Background**

This case invokes federal law under the Miller Act and the CDA, as well as California contracts law.

**The Miller Act.** Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days ... may bring a civil action on the payment bond for the amount unpaid." 40 U.S.C. § 3133(b)(1). "The Miller Act ... requires a general contractor on a federal project to post a bond to protect those who supply labor or materials for the project.... The purpose of the Act is to protect persons supplying materials and labor for federal projects, and it is to be construed liberally in their favor to effectuate this purpose." *U.S. for Use & Benefit of Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 760–61 (9th Cir.1984) (citing *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 124, 94 S.Ct. 2157, 40 L.Ed.2d 703(1974)). The Miller Act allows the subcontractor to recover increased labor and materials costs, but not for the subcontractor's lost profits, when caused by delay or changes in scope of work. *Mai Steel Serv., Inc. v. Blake Const. Co.*, 981 F.2d 414, 418 (9th Cir. 1992).  The Miller Act states that waivers of its protections are void unless they are "executed after the person whose right is waived has furnished labor or material for use in performance of the contract." 40 U.S.C. § 3133(c)(3).

**The CDA**.  The CDA provides the statutory framework for resolving disputes between government contractors and the government. Section 7103(a) provides that "[a]ll claims by a contractor against the government relating to a contract ... shall be submitted to the contracting officer for a decision," and § 7101(a)(7) defines a "contractor" as "a party to a Government contract other than the Government." The Ninth Circuit has made clear that "[u]nder the CDA, contracting officers have jurisdiction only over claims by contractors against the government, *not over claims brought directly by subcontractors*." *NavCom Defense Electronics, Inc. v. Ball Corp*., 92 F.3d 877, 879-80 (9ᵗʰ Cir. 1996)(per curiam)(emphasis added)(quoting *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813

5

(Fed.Cir.1984)("[It is]'hornbook rule' that subcontractors have no standing to enforce claims under CDA").

A subcontractor may assert a claim against the government only by having the prime contractor "sponsor" and certify the subcontractor's claim. *Id.*at 880. The contracting officer has no jurisdiction to resolve disputes between a subcontractor and the prime contractor. *Id.*

## IV. <u>STANDARD OF DECISION</u>

F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U .S. 375, 377, (1994). A "court of the United States may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *U.S. v. Bravo–Diaz*, 312 F.3d 995, 997 (9th Cir.2002). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989). Limits on federal jurisdiction must neither be disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir.2001).

A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.1979) (*citing Land v. Dollar*, 330 U.S. 731, 735 & n. 4 (1947); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890–892 (3rd Cir.1977); *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130–1131 (2nd Cir.1976)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1038 (9th Cir.2004). In such an attack, "[t]he factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary

6

for subject matter jurisdiction." *Id*. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id. See also Dreier v. United States,* 106 F.3d 844, 847 (9th Cir. 1996) ("To best reconcile these two views of 12(b)(1) motions, we will consider items outside the pleading that were considered by the district court in ruling on the 12(b)(1) motion, but resolve all disputes of fact in favor of the non-movant.")

With these standards in mind, this Court turns to Total Team's challenges to ACES' assertion of subject matter jurisdiction.

# V. <u>DISCUSSION</u>

ACES asserts that jurisdiction in this Court is proper because its Miller Act claim arises under federal law and that this Court has diversity, supplemental and pendant jurisdiction over its state law claims. Compl. at ¶ 7. A valid Miller Act claim requires a plaintiff to prove: "(1) it supplied labor or materials in carrying out work provided for in a contract for which a payment bond [was] furnished under section 3131; (2) it has not been paid; and (3) it had a good faith belief that the labor or materials supplied were intended for the specific work*." U.S. ex rel. Hajoca Corp. v. Aeroplate Corp*., 2013 WL 3729692, *5 (E.D.Cal.2013) (Findings and Recommendations adopted by 2013 WL 4500475); 40 U.S.C. § 3133(b)(1). ACES alleges these elements in its complaint. *See* Section III(A)*, infra.*

Total Team does not dispute that ACES' claims contain elements of a valid Miller Act Claim or that its related claims arising under state law provide an adequate basis for diversity, supplemental or pendant jurisdiction.  Rather, Total Team argues that Section 18.1 of the Subcontract requires that all claims or disputes arising under the Subcontract must be resolved in accordance with CDA procedure, as outlined in the Prime Contract. Total Team alleges that ACES has not exhausted its remedies under the CDA and therefore its Complaint is premature. Because this argument asserts that the Complaint is insufficient as a matter of law, it is a facial attack. As such, factual allegations made in the complaint will be presumed to be true for the purpose of this analysis.

**A.**     **The Claims Resolution Procedure Section of the Subcontract**

       Plaintiff does not deny that Section 18.1 provides that the CDA process described in the Prime Contract is the mechanism identified by parties for resolving disputes. However, Plaintiff alleges that Section 18.2.5 provides additional remedies in that it reserves rights it might have under "Federal or State mechanics lien laws" and "applicable labor and material payment bonds." Defendant does not suggest an alternative reading or interpretation of Section 18.2.5.  It is black letter law that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." *Block v. eBay*, Inc., 12-16527, 2014 WL 1282288 (9th Cir. Apr. 1, 2014)(citing Cal. Civ. Code § 1641 and *Serv. Employees Int'l Union, Local 99 v. Options—A Child Care & Human Servs. Agency*, 133 Cal.Rptr.3d 73, 79–80 (Ct.App.2011).

       Upon review of the Subcontract, it appears that it is based on a standard template and that the parties crossed out and altered terms to reach a final agreement. Section 18 was given this treatment, with language in Section 18.2.4 struck out in part and the whole of 18.2.6 struck in its entirety. No alterations were made to Sections 18.1 or 18.2.5 and thus this Court cannot ignore either provision.

       Reviewing the whole of the contract together, this Court finds that Section 18.1 is intended to provide the general mechanism for resolving disputes that arise under the subcontract, but that Section 18.2.5 protects ACES' additional rights under law. This interpretation is supported by the letter and spirit of the CDA. The CDA process cannot be activated by ACES, because it is not a party to the Prime Contract. Rather, ACES must rely on Total Team to sponsor and certify its claims to the ACOE. The Subcontract is silent as to how the parties will coordinate claims brought pursuant to the CDA or resolve disputes in the course of claim being brought pursuant to the CDA. Thus it is evident that the intention of Section 18.2.5 is to preserve remedies so that ACES *is not* solely reliant upon Total Team's prosecution of a CDA claim for recovery.

       This finding is consistent with the decisions of courts that have been disinclined to incorporate by reference prime contract "disputes provisions" which provide for an administrative determination of rights in the absence of the subcontractor. *See, e.g. Central Steel Erection Co. v. Will*, 304 F.2d 548, 551

(9th Cir.1962) (landmark case holding that dispute clause in prime contract did not apply to subcontractor) ; *HPS Mech., Inc v. JMR Constr. Corp*., 11-CV-02600-JCS, 2013 WL 5954895 (N.D. Cal. Nov. 6, 2013)(holding that a "pay if paid" clause in contract did not waive plaintiff's Miller Act rights).

Accordingly, to the extent that ACES' claims are rights or remedies under "Federal or State mechanics lien laws" or "applicable labor and material payment bonds," they are not contractually barred from consideration by this Court.

**B.**     <u>**Waiver of Miller Act Rights**</u>

Plaintiff ACES asserts that Defendant's reading of Section 18.1 as an exclusive dispute resolution procedure would deny ACES its rights under the Miller Act. Doc. 16 at 6. Defendant argues that Plaintiff's Miller Act rights would not be stripped if the Court dismisses without prejudice or stays the litigation pending exhaustion of claims resolution prosecution under the CDA. Doc. 17 at 5, 7. This argument is premised on an assumption that ACES did not waive its Miller Act Rights.

The Court agrees that ACES has not waived its Miller Act Rights, based on arguments presented by both parties and by a plain reading of Section 18.2.5. Further, the Miller Act requires a clear and explicit waiver of rights which is "executed *after* the person whose right is waived has furnished labor or material for use in performance of the contract." 40 U.S.C. § 3133(c)(3)(emphasis added).  Section 18.2.5 explicitly *reserves* rights available under lien laws and bond payments, "unless such rights or remedies are expressly waived by him." Total Team does not identify any language that could be construed such a waiver. Additionally, the subcontract identified by both parties was executed *before* ACES performed its obligations. Thus there is simply no evidence that ACES has waived these rights.

**C.**     <u>**Defendant's Request for Stay**</u>

In the alternative, Total Team asserts in its briefings that because it is in the process of preparing a CDA claim, that judicial economy would be served by staying this case and having ACES' claims heard in the same forum. However, Total Team has not provided the Court with any evidence of its

claim prosecution or how ACES' claims would be addressed in this context. Thus, there is no basis for

staying the litigation at this time. Defendant's alternative request for a stay is DENIED without

prejudice.

## VI. <u>CONCLUSION AND ORDER</u>

For the reasons discussed above the Court DENIES without prejudice Defendant's Motion to

Dismiss for Lack of Subject Matter Jurisdiction as well as Defendant's alternative motion to stay.

IT IS SO ORDERED.

Dated:   **April 23, 2014**                    **/s/ Lawrence J. O'Neill**
                                               UNITED STATES DISTRICT JUDGE